UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FREMONT INSURANCE COMPANY,

    Plaintiff,

Case No. 1:20-cv-12720
Honorable Thomas L. Ludington

v.

GOODMAN COMPANY, L.P.,
et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT GOODMAN COMPANY L.P.'S MOTION TO DISMISS AND DISMISSING DEFENDANT GOODMAN COMPANY L.P.**

On October 7, 2020, Plaintiff filed a three count Complaint alleging breach of implied warranty in tort, manufacturing defect/design defect, and breach of warranty against Defendants Goodman Manufacturing Company, L.P., Everex Communications, Inc., and Prime Technologies, Inc. ECF No. 1. To date, Prime Technologies, Inc. has not been served. On February 3, 2021 a stipulation was entered dismissing Defendant Goodman Manufacturing Company, L.P and permitting service of summons on Goodman Company L.P. ECF No. 13. An amended complaint was filed on February 10, 2021. ECF No. 15. On March 12, 2021, Goodman Company, L.P. and Plaintiff stipulated to dismiss any Uniform Commercial Code claims. ECF No. 22.

On February 19, 2021, Defendant Goodman Company, L.P. (hereinafter, "Defendant Goodman") filed a motion to dismiss. ECF No. 18. Response and reply briefs were timely filed. ECF Nos. 21, 23, 24.

## I.

Plaintiff insured a commercial hotel, Fairfield Inn and Suites by Marriott, owned and operated by Varniraj MP, Inc. On November 16, 2019, a packaged terminal air conditioner/heat pump or PTAC, manufactured by Defendant Goodman caused a fire at the hotel. ECF No. 18 at PageID.73. Plaintiff reimbursed the hotel owner for fire damage. ECF No. 18 at PageID.73; ECF No. 23 at PageID.134. Plaintiff, as subrogee for Varniraj MP, seeks reimbursement from Defendants as a result of the fire. An investigation "revealed that the fire was caused by the spontaneous ignition of the printed circuit board within the Goodman PTAC." ECF No. 23 at PageID.134. The remaining claims in Counts I, II, and III against Defendant Goodman are based in tort, as the Uniform Commercial Code claims have been dismissed by stipulation. ECF No. 18 at PageID.73. Plaintiff does not dispute that its loses are solely economic.

## II.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

The Sixth Circuit has held that "a conclusory legal interest" in forfeited property is insufficient to be successful against a motion to dismiss. *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014); *United States v. Akhtar*, 2018 WL 5883930 at *2 (6th Cir. Sept. 19, 2018).

### III.

Defendant argues that the economic loss doctrine forecloses Plaintiff's tort claims.[1] "The economic loss doctrine provides that 'where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses.'" *Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783, 784–85 (Mich. Ct. App. 2002) (quoting *Huron Tool & Engineering Co. v. Precision Consulting*, 532 N.W.2d 541, 543 (Mich. Ct. App. 1995)). The Michigan Supreme Court explained that "[t]his doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Neibarger v. Universal Cooperatives, Inc.,* 486 N.W.2d 612, 616 (Mich. 1992). The rationale for the economic loss doctrine is based on the policies served by tort and contract law.

> As developed by the courts, then, the individual consumer's tort remedy for products liability is not premised upon an agreement between the parties, but derives either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the consumer. Such a policy serves to encourage the design and production of safe products.
>
> On the other hand, in a commercial transaction, the parties to a sale of goods have the opportunity to negotiate the terms and specifications, including warranties,

---

[1] Defendant argues that Plaintiff Fremont Insurance Company, as subrogee for Varniraj MP, Inc. "succeeds to the rights of its subrogor, subject to all of the defenses that may have been asserted against its subrogor." ECF No. 18 at PageID.74. *See Yerkovich v. AAA*, 610 N.W.2d 542, 544 (Mich. 2000) ("As a subrogee, one stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor.") Plaintiff does not dispute this.

disclaimers, and limitation of remedies. Where a product proves to be faulty after the parties have contracted for sale and the only losses are economic, the policy considerations supporting products liability in tort fail to serve the purpose of encouraging the design and production of safer products.

*Id.* at 616. If the economic loss doctrine applies, Plaintiff's "exclusive remedy" is the Uniform Commercial Code, including its statute of limitations. *Id.* at 618.

"In Michigan, the economic-loss doctrine bars tort claims that seek to recover not just for losses to the *product itself* but also for foreseeable losses to *other property*." *Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 778 (6th Cir. 2019) (emphasis in original) (citing *Neibarger*, 486 N.W.2d at 619–20). "The court thus sought to allow commercial parties to negotiate over which side will bear the risk of this additional property damage and incorporate that risk allocation into the contract price." *Id.* In addition, it "bar[s] a commercial plaintiff's tort suit against a product manufacturer even though the plaintiff did not directly contract with the manufacturer." *Id.* at 778–79 (collecting cases).

Plaintiff argues that the policies underlying torts as well as public safety considerations require that the economic loss doctrine be rejected in this case. Plaintiff, citing *Neibarger*, argues that "society's interest in [contract law is] the performance of promises" while "society's interest in [tort law is] the freedom from harm." ECF No. 23 at PageID.138 (quoting *Neibarger*, 486 N.W.2d at 615). Plaintiff oversimplifies the underlying policy considerations. The full quote from *Neibarger* provides,

> The purpose of a tort duty of care is to protect society's interest in freedom from harm, *i.e.,* the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

Neibarger, 486 N.W.2d at 615 (quoting *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 672 (N.J. 1985)). That is to say, the goal of tort law is not only to prevent harm, but harm "without reference to any agreement between the parties." *Id.* In this case, Plaintiff does not dispute that there was a contractual relationship between the parties. Instead, Plaintiff argues the potential harm to society, specifically the resulting structural fire, should prevent application of the economic loss doctrine.

Plaintiff contends that "[s]tructure fires, even fires that only cause property damage, inherently pose risk—they pose risks because they potentially could cause injury, they impose costs borne by the public purse through the cost of emergency personnel and fire departments, and society has an interest in not having its buildings burn." ECF No. 23 at PageID.144. In support, Plaintiff cites three cases where consumer products resulted in structural fires and argues this tort-based risk trumps the contractual interest in enforcing contractual expectations because "no one negotiates a separate 'no fire for life of product' warranty because such a disaster is not within the contemplation of the parties to a purchase transaction." ECF No. 23 at PageID.146.

In *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508 (E.D. Mich. 2008), Judge Murphy expressed his concern that the loss was "not just the economic expectation in the [decking material] product, but also the adjoining house which was substantially damaged," concluding that "tort concerns in product safety clearly abound." *Id.* at 511–12. However, Judge Murphy referenced product safety concerns while distinguishing the case before him from *Sherman v. Sea Ray Coats*, a 2002 case where the Michigan Court of Appeals extended the economic loss doctrine to consumers. 649 N.W.2d 783 (Mich. Ct. App. 2002).

In *State Farm Fire and Cas. Co. v. Conair Corp.,* a coffeemaker caused a fire at a consumer's residence. 833 F. Supp. 2d 713 (E.D. Mich. 2011). Judge Rosen explained "the losses

claimed by Plaintiff on behalf of the [consumers] [were] not limited to disappointed economic expectations arising from a non-performing coffeemaker, but instead rest[ed] upon allegations of a dangerous and unsafe consumer product that caused unanticipated harm to [their] property." *Id.* at 718–19.

In *State Farm & Casualty v. General Electric*, 2020 WL 39992 (Mich. Ct. App. Jan. 2, 2020) a consumer purchased a dehumidifier which caused a fire and damaged a residential home. The Michigan Court of Appeals overturned the trial judge who held that the economic loss doctrine applied explaining, "[The consumer] is not a sophisticated user with the knowledge and ability to allocate liability in the purchase and sale agreement" and "there is no basis to conclude that fire damage to [the consumer's] property 'was within the contemplate of the parties' when [she] purchased the dehumidifier." *Id.* at *3.

Plaintiff also cites *State Farm Fire v. Ford* where the Michigan Court of Appeals held that "the mere fact that only property was damaged, i.e., economic losses were incurred, does not mean that the case automatically became a UCC case to be removed from underneath the umbrella of products liability law." *State Farm Fire & Casualty Co. v. Ford Motor Co.*, 2010 WL 866149 at *17 (Mich. Ct. App. March 11, 2010). Instead, the court found that the case presented "a classic example of a products liability action, absent physical injury or death to a person." *Id.* However, a crucial piece of the court's analysis in that case, as well as the above cases, is that the plaintiffs were ordinary consumers, not commercial entities. *See id.* at *11–12 ("[I]t cannot reasonably be argued that a consumer purchaser of a motor vehicle would anticipate and contemplate fire damages as a possible consequence of ownership of the vehicle, even a defective vehicle, let alone that the purchaser would be leery of or concerned about fire damages to a garage, home, and other property.").

In support of its argument that the economic loss doctrine applies, Defendant cites *Michigan Mutual Ins. Co. v. Osram Sylvania, Inc.*, 897 F. Supp. 992 (W.D. Mich. 1995). There, a metal halide lamp malfunctioned and caused a fire at an industrial facility. In concluding that the economic loss doctrine applied, the court held, "[I]t is foreseeable that a product which operates under high temperatures and under pressure could explode upon failure. Fires caused by electrical products are simply not beyond the contemplation of commercial entities." *Id.* at 995.

Similarly, in *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236 (6th Cir. 1994), pipes deteriorated at a power plant resulting in an explosion that caused personal injury and property damage. The Sixth Circuit held, "[T]he approach adopted by *Neibarger* focuses our inquiry not so much on the magnitude or extent of the damage as on the parties involved and the nature of the product's use. Both parties in this case are sophisticated commercial entities of equivalent bargaining power; they were in a position to fully negotiate, before the fact, the issue of potential liability." *Id.* at 242.

Unlike the cases cited by Plaintiff, this case more closely resembles *MASB-SEG Property/Casualty Pool, Inc. v. Metalux*, 586 N.W.2d 549 (Mich. Ct App. 1998), where a technology center (subrogor of the insurance company plaintiff) purchased a defective fluorescent light fixture and installed it at an industrial technology center before the light fixture malfunctioned, causing a fire. The *MASB-SEG* court held that the economic loss doctrine precluded the plaintiff's tort claim because "the potential failure of the capacitor within the light fixture in the present case, and the damage caused by the resulting fire, were direct and consequential losses that were within the contemplation of the parties when they entered into the agreement for the sale of the light fixture." *Id.* at 554. Indeed, in *State Farm v. Ford Motor Company*, *supra*, the court distinguished *MASB-SEG Property* because "a fire caused by a light

fixture could reasonably be anticipated and contemplated should the fixture be faulty or defective." *Ford Motor Co.*, 2010 WL 866149, at *14 n.3. The court also noted that "the plaintiff-purchaser [in *MASB-SEG*] was a sophisticated commercial entity with the knowledge and ability to allocate liability in the purchase and sale agreement and that the light fixture was used for a commercial purpose." *Id.*

This case is also similar to *Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 585 N.W.2d 314 (Mich. Ct. App. 1998). In that case, the wooden roof decking of the plaintiff-subrogor's restaurant had been treated for flame retardancy using the defendant's product and instructions. About 16 years after construction, the roof collapsed causing damage to the restaurant. *Id.* at 41–42. Even though the plaintiff argued that the "fire-retardant-treated wood was not directly related to [its] business, and [it] could not have anticipated such an 'unforeseeable disaster,'" the court concluded, "[The plaintiff] is a commercial business and the wood treated with defendant's chemicals was purchased for commercial purposes, and because the damage to the restaurant was purely economic, under *Neibarger*, the UCC provides the exclusive remedy." *Id.* at 44–45.

Here, there is a product safety concern (the resulting structural fire), but Plaintiff is a commercial entity and the PTAC unit was installed at a commercial property. The purpose of contract law is to encourage parties to negotiate the burden for risk, not to eliminate risk. The rationale for the economic loss doctrine is that when losses are solely economic and the risk could have been or was considered between two commercial parties, the risk should be born by the parties through the contract and not through tort law.

Here, Plaintiff, as subrogee for the hotel owner, is a commercial entity. So too is Defendant Goodman. The PTAC unit was used in a commercial building and business. The PTAC unit malfunctioned, which started a fire in the hotel. The risk of a fire from a PTAC unit was predictable

and was within scope of the contract negotiations between the parties. The economic loss doctrine applies here. Defendant Goodman Company, L.P.'s Motion to Dismiss will be granted.

**IV.**

Plaintiff filed the instant case on October 7, 2020. ECF No. 1. Summons were issued for all Defendants, but Plaintiff has not filed a proof of service for Prime Technologies, Inc. Plaintiff will be directed to show cause why the Complaint should not be dismissed against Prime Technologies, Inc. for failure to prosecute.

**V.**

Accordingly, it is hereby **ORDERED** that Defendant Goodman Company, L.P.'s Motion to Dismiss, ECF No. 18, is **GRANTED**.

It is further **ORDERED** that Defendant Goodman Company, L.P. is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff is **DIRECTED TO SHOW CAUSE** why the Complaint should not be dismissed against Defendant Prime Technologies for failure to prosecute. Plaintiff's response shall be no more than 8 pages and be filed on or before **May 21, 2021**.

Dated: May 6, 2021                                              s/Thomas L. Ludington
                                                                                          THOMAS L. LUDINGTON
                                                                                          United States District Judge